UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNN RENEE COGGINS,

        Petitioner,

                                          CASE NO. 2:13-CV-11753
    v.                                      JUDGE NANCY G. EDMUNDS
                                          MAGISTRATE JUDGE PAUL J. KOMIVES

MILLICENT WARREN,

        Respondent.

_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.    *Judicial Factfinding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.    *Inaccurate Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        4.    *Failure to Consider Mitigating Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        5.    *Proportionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*        *        *        *        *


I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.


II.    REPORT:


A.    *Procedural History*


    1.    Petitioner Lynn Renee Coggins is a state prisoner, currently confined at the Huron

Valley Correctional Facility/Women's Complex in Ypsilanti, Michigan.

2.      On March 3, 2011, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; and conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a, .529, pursuant to her guilty plea in the Oakland County Circuit Court.  On April 12, 2011, she was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 15-30 years' imprisonment.

3.      Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF THE PROPER APPLICATION OF OTHER STATE LAW RULES, STATUTES AND PRINCIPLES AND HER DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS APPLICABLE TO SENTENCING.

II.     THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT FAILED TO TAKE INTO ACCOUNT ALL MITIGATING EVIDENCE IN SENTENCING THE DEFENDANT.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *See People v. Coggins*, No. 306823 (Mich. Ct. App. Nov. 29, 2011).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Coggins*, 491 Mich. 910, 810 N.W.2d 566 (2012).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 18, 2013.  As grounds for the writ of habeas corpus, she raises the same claims she raised

in the state courts.

6.     Respondent filed her answer on October 24, 2013.  She contends that petitioner's claims are without merit or not cognizable on habeas review.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged with first degree felony murder, armed robbery, and conspiracy to commit armed robbery arising from the June 17, 2010, robbery of Venkata Cattamanchi at the EZ-Rest Motel in Southfield, Michigan.  Jessica Ermatinger, a prostitute, and her boyfriend James Randle, devised a plan to rob one of Ermatinger's clients.  They brought petitioner in to drive them to Southfield, and were also joined by Kevin Huffman.  The victim picked up Ermatinger at a restaurant near the motel, and the two went to the EZ-Rest.  The victim gave Ermatinger money to rent a room.  She went back to the victim's vehicle to get more money, at which point Huffman approached the passenger side and Randle approached the driver's side.  They ordered the victim to hand over his money, and after he complied Huffman shot him.  The three then ran back to petitioner's vehicle, where petitioner was waiting for them.  The group was arrested a short time later.  Petitioner and the prosecutor entered into a plea agreement.  Pursuant to the agreement, the prosecutor would amend the information to a charge of second degree murder, to which petitioner would plead guilty.  Petitioner would also plead guilty to the conspiracy charge. In exchange for her truthful testimony at her codefendants' trials, the prosecution would dismiss the armed robbery charge at sentencing.  The deal included a *Cobbs* agreement[1] for a minimum term of 15-20 years' imprisonment, with a maximum term to be determined by the court, up to life imprisonment.  *See*

---

[1]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw her plea if the actual sentence imposed is more severe.

Plea Tr., at 4-6.  In accordance with the *Cobbs* agreement, petitioner was sentenced to concurrent terms of 15-30 years' imprisonment.  The 15 year minimum term represented a downward departure from the applicable sentencing guidelines range.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

4

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

The deferential standard of review set forth in § 2254(d) applies even though the Michigan Court of Appeals did not issue a reasoned decision.  As the Supreme Court has explained, an unexplained summary order by a state court is presumed to be a rejection of the claims on the merits, and the petitioner bears the burden of demonstrating that the rejection was on some basis other than

the merits.  *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  Here, there is no indication

that the Michigan Court of Appeals denied petitioner's application for leave to appeal on any basis

other than the merits.  On the contrary, the court of appeals explicitly stated that its denial was "for

lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a

denial on this basis is "a determination on the merits of the case."  *Attorney Gen'l ex rel. Dep't of

Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249

(1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28,

2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3

(Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332

N.W.2d 521, 523 (1983).  Accordingly, the Michigan Court of Appeals's denial of petitioner's

application for leave to appeal "for lack of merit in the grounds presented" constitutes an

adjudication on the merits for purposes of § 2254(d).  *See Snyder v. Lafler*, No. 09-13773, 2011 WL

309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.).

D.      *Analysis*

        Petitioner raises several challenges to her sentence.  Specifically, she contends that the trial

court incorrectly scored several variables in determining the guidelines; improperly based her

sentence on facts to which she did not admit; based her sentence on inaccurate information; failed

to consider mitigation factors such as her rehabilitative potential; and imposed a disproportionate

sentence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.[2]

---

[2]As an initial matter, I note that because petitioner agreed to a specific sentencing range, all of
her claims are without merit based on this agreement.  The agreement provided that the minimum term
of imprisonment would be between 15 and 20 years' imprisonment.  The trial court sentenced petitioner
at the minimum allowed by this agreement.  Indeed, petitioner's sentence reflected a downward
departure from not only the minimum term calculated under the sentencing guidelines, but also from
the minimum term that results from calculating the guidelines as petitioner contends they should have

1.    *Guidelines Scoring*

Petitioner first contends that the trial court erred in scoring a number of offense variables in computing her guideline score.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508

been calculated.  *See* Def.-Appellant's Br. on Appeal, in *People v. Coggins*, No. 306823 (Mich. Ct. App.), at 23 (stating that petitioner's guideline range as calculated was 270-562 months, but as calculated by petitioner it should have been 225-468 months).  Indeed, even petitioner's *maximum* sentence is within the guideline range (which applies only to minimum sentences) as calculated by petitioner.  Thus, any scoring of the guidelines was irrelevant to petitioner's sentence and any deficient performance on the part of counsel in failing to object did not impact petitioner's sentence. *Cf. Dorie v. Phillips*, No. 1:07-cv-1195, 2010 WL 1258234, at *7 (W.D. Mich. Mar. 8, 2010) (where petitioner agreed to applicable guideline range as part of plea agreement, counsel was not ineffective in failing to object to scoring of the guidelines), *magistrate's report adopted*, 2010 WL 1258233 (W.D. Mich. Mar. 30, 2010).  Likewise, any *Apprendi* error was irrelevant, *see United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (alleged *Apprendi* error in court scoring sentencing guidelines was irrelevant where defendant agreed to specific sentence, and thus his sentence arose from the plea itself and not the guidelines), as was the trial court's reliance on any allegedly false information, *see Watkins v. Scutt*, No. 5:09-CV-11285, at *6 (June 11, 2010) (Komives, M.J.), *magistrate judge's report and recommendation adopted*, 2010 WL 2870058 (E.D. Mich. July 21, 2010) (O'Meara, J.).  In any event, petitioner's claims are without merit or not cognizable for the additional reasons explained below.

(claim that court misapplied state sentencing guidelines not cognizable on habeas review).  Thus, petitioner is not entitled to habeas relief on her claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

2.    *Judicial Factfinding*

Petitioner also argues that the scoring of the guidelines was improper because it was based on facts found by the trial judge at sentencing, not on facts found by the jury, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow

9

federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

*Blakely* and *Apprendi*, however, are inapplicable here. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the

10

statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286

n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore,

contained all of the factual findings necessary to impose the statutory maximum (life imprisonment)

on that charge.  *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power

to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum'

sentence will always fall within the range authorized by the jury's verdict.").

      This being the case, petitioner's sentence did not violate *Blakely*.  The Supreme Court has

repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which

is authorized by a jury's verdict or a defendant's plea.  As the Supreme Court explained in *Harris*

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights.  The same cannot be said of a fact increasing the mandatory minimum (but
> not extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

>     Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels.  First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power.  It limits
> judicial power only to the extent that the claimed judicial power infringes on the
> province of the jury.  Indeterminate sentencing does not do so.  It increases judicial
> discretion, to be sure, but not at the expense of the jury's traditional function of
> finding the facts essential to lawful imposition of the penalty.  Of course

11

> indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted). Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan Supreme Court have repeatedly held. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

This conclusion is not altered by the Supreme Court's more recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In that case, the Court overruled *Harris*, and extended *Apprendi* to facts that increase a mandatory minimum sentence. Reasoning that the *Harris* Court's distinction between facts that increase the statutory maximum and facts that increase a mandatory minimum is inconsistent with *Apprendi*, the Court in *Alleyne* held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155 (citation omitted). The Court was careful to note, however, that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163. Judges retain broad discretion to impose any sentence within the range authorized by law based on the jury's findings (or the facts admitted in a plea), and may judicially

12

find facts in exercising this discretion. *See id.*

      *Alleyne* is inapplicable here. *Alleyne* dealt with statutory mandatory minimum sentences, as opposed to facts used to determine the minimum sentence of an indeterminate sentencing scheme such as Michigan's. Therefore, "[i]t is questionable whether *Alleyne* applies to Michigan's sentencing scheme." *Spears v. Curtin*, No. 1:13-cv-1013, 2013 WL 5636625, at *6 (W.D. Mich. Oct. 16, 2013). More importantly, even if *Alleyne* now bars judicial factfinding under the Michigan sentencing scheme, it does not constitute "clearly established federal law" under § 2254(d)(1) for purposes of petitioner's claim. At the time the Michigan Court of Appeals rejected petitioner's *Apprendi* claim, *Alleyne* had not been decided and the Court's decision in *Harris* made clear that the Michigan Court of Appeals's rejection of petitioner's claim was proper. The rule of *Alleyne* was not clearly established at the time the state courts rejected petitioner's claim, and thus it provides no basis for habeas relief under § 2254(d)(1). *See Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Williams v. Smith*, No. 11-15163, 2014 WL 632437, at *7 (E.D. Mich. Feb. 18, 2014) (Lawson, J., adopting report and recommendation of Komives, M.J.); *Stockman v. Berghuis*, No. 2:10-CV-14860, 2013 WL 6885121, at *14 (E.D. Mich. Dec. 31, 2013). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.    *Inaccurate Information*

      Petitioner next contends that her sentence was based on inaccurate information. The Court should reject this claim. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord*

*Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Here, petitioner's challenge is not to the accuracy of the information relied upon by the trial court. Rather, she contends that the facts relied upon by the trial court were insufficient as a legal matter to support the trial court's scoring of the various offense variables. As noted above, the legal sufficiency of the facts to support the scoring of an offense variable is a question of state law which is not cognizable on habeas review. *See Norton v. Lafler*, No. 08-12797, 2010 WL 5672743 (Apr. 19, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2011 WL 318099, at *2 (E.D. Mich. Jan. 31, 2011) (Hood, J.); *Southward v. Warren*, No. 2:08-CV-10398, 2009 WL 6040728, at *19 (July 24, 2009) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 733035, at *2 (E.D. Mich. Feb. 26, 2010) (Steeh, J.). At best, petitioner's argument boils down to a dispute over the trial court's resolution of factual questions. However, this is insufficient to establish that she was sentenced on the basis of material false information in violation of her right to due process under

14

*Townsend* and *Tucker*.  As the Court made clear in *Townsend*, an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741.  "Thus, what is essential is that the sentencing judge decide upon the sentence after being made aware of all exculpatory evidence and of the defendant's version of the story." *United States v. Von Saltzer*, 532 F. Supp. 584, 586 (D. Nev. 1982).  Here petitioner, through counsel, had the opportunity to object to the scoring of the offense variables.  The trial judge, based on the information available, drew inferences from the facts and made factual findings.  While petitioner disputes those findings, she has offered nothing to show that they were materially false.  Thus, she has failed to establish a due process violation under *Townsend*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      4.    *Failure to Consider Mitigating Factors*

      Petitioner also contends that the trial court erred in failing to consider various mitigating factors in imposing her sentence, such as her rehabilitative potential and mental health history.  This claim is without merit.  Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing

15

*Eddings v. Oklahoma*, 455 U.S. 104, 110-112 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980);

*Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05).  Based on these cases,

the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-

capital cases.  *Harmelin*, 501 U.S. at 996 ("We have drawn the line or required individualized

sentencing at capital cases, and see no basis for extending it further."); *see also*, *id*. at 1006

(Kennedy, J., concurring).  Likewise, nothing in the Constitution requires a state to establish its

system of criminal sanctions to give primacy to any one penological goal.  *See Harmelin*, 501 U.S.

at 999 (Kennedy, J.) ("[T]he Eighth Amendment does not mandate adoption of any one penological

theory.").  Thus, the trial court's alleged failure to consider mitigating factors in imposing

petitioner's sentence provides no basis for habeas relief.

     5.    *Proportionality*

Finally, petitioner contends that her sentence was disproportionate to her offense.  To the

extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*,

435 Mich. 630, 461 N.W.2d 1 (1990), her claim is solely one of state law which is not cognizable

on federal habeas review.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999)

(Cleland, J.).  To the extent petitioner claims that her sentence violates the Eighth Amendment, the

claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment

requires that "a criminal sentence be proportionate to the crime for which the defendant has been

convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three

objective factors which are relevant: "(i) the gravity of the offense and the harshness of the penalty;

(ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences

imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303. However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id*. at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. at 1005-06.[3] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth

---

[3] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

17

Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in

concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id*. at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner was initially charged with first degree felony murder arising from a robbery in which the victim, apparently without reason after having complied with the robbers' demands, was fatally shot. Had petitioner been convicted of first degree murder, she would have faced a mandatory term of life imprisonment. *See* MICH. COMP. LAWS § 750.316. To avoid this possibility, petitioner pleaded guilty to second degree murder, which itself carried a potential maximum term of life imprisonment.

*See* MICH. COMP. LAWS § 750.317. Notwithstanding these facts, the trial court imposed a sentence of 15-30 years' imprisonment, well below the guidelines range on the minimum sentence and well below the potential imprisonment on the maximum sentence. In these circumstances, petitioner cannot show that her sentence of 15-30 years' imprisonment was grossly disproportionate to her offense. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009-10 (E.D. Mich. 1999) (Cleland, J.) (life without parole for second-degree murder conviction under MCLA § 750.317 not disproportionate); *Ramos v. Weber*, 303 F.3d 934, 937-38 (8th Cir. 2002) (life imprisonment for first-degree manslaughter); *cf. Lockyer*, 538 U.S. at 73-77 (upholding sentence of 25 years' to life imprisonment for theft under recidivist statute); *Ewing*, 538 U.S. at 28-30 (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

21

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. It is clear that petitioner's claims challenging the scoring of the guidelines and the trial court's failure to consider mitigating factors do not raise cognizable bases for habeas relief, and thus the resolution of these claims is not reasonably debatable. Further, because it is clear that *Apprendi* does not (or at least did not at the time of the court of appeals's decision) apply to Michigan's indeterminate sentencing scheme, the resolution of petitioner's *Apprendi* claim is not reasonably debatable. And because petitioner cannot show that the trial court relied on any inaccurate information in imposing sentence or that her sentence is grossly disproportionate to her offense, the resolution of these claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

22

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: March 31, 2014                              s/Paul J. Komives_____
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014.


                                                  s/ Kay Doaks_____
                                                  Case Manager